J-A13018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.T.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3509 EDA 2019 |

Appeal from the Order Entered November 20, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000935-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: S.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3510 EDA 2019 |

Appeal from the Order Entered November 20, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001813-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: P.J.C. JR.,  A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3511 EDA 2019 |

Appeal from the Order Entered November 20, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000936-2018

IN THE INTEREST OF: P.C., A MINOR  :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
APPEAL OF: P.C., FATHER   :
  :
  :
  :
  :
  :
  :
  :   No. 3512 EDA 2019

Appeal from the Order Entered November 20, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0093268-2007

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:         **FILED JUNE 9, 2020**

P.C., Sr. (Father) appeals from the trial court's orders[1] involuntarily terminating his parental rights to his minor children, P.C., Jr. (born 10/04) and S.C. (born 3/09) (collectively, Children).[2]  Counsel has also filed a petition to withdraw on appeal, pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **In re Adoption of V.E.**, 611 A.2d 1267 (Pa. Super. 1992).  After careful review, we affirm and grant counsel's petition to withdraw.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that by filing four separate notices of appeal with one docket number on each notice, Father has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases." **See also** Pa.R.A.P. 341(a).

[2] Mother's parental rights were also terminated as to Children.  She is not a party to this appeal.  Father testified in August 2019 that she had "been missing" for some time and that "[i]t appears she might even be dead."  N.T. Termination Hearing, 8/5/19, at 29.

Children were first adjudicated dependent and placed in foster care in July 2015 after the Philadelphia Department of Human Services (DHS) substantiated reports of their parents' drug abuse and lack of housing. On October 4, 2016, however, Children were reunified with Father, and on January 4, 2017, Children's dependency matters were discharged.

In May 2017, Father and Children were living in a homeless shelter. Father, who was struggling with substance abuse issues, reportedly abandoned his methadone prescription against medical advice and stopped attending his drug and alcohol program. Additionally, Children had missed several days of school, and P.C., Jr., was not receiving treatment for ongoing vision issues. On May 14, 2017, Father left the shelter without staff approval, leaving Children in the care of Mother; because Mother was not a resident of the shelter, she was asked to leave. On May 15, 2017, shelter staff took Children to school. Although Father picked Children up from school that day, he did not return to the shelter with them until the following day, explaining that he had nowhere else to go. Shortly thereafter, Father left the shelter once again and returned intoxicated, at which point he was evicted. On May 18, 2017, the trial court entered a shelter order placing Children in foster care.

Following an adjudicatory hearing on May 26, 2017, Children were adjudicated dependent and committed to DHS; both parents were referred for housing, employment, and parenting classes, and to the Clinical Evaluation Unit (CEU) for immediate drug and alcohol screens, dual-diagnoses assessments, and random drug screens. On July 26, 2017, DHS's Community

Umbrella Agency (CUA) established the following permanency plan for Father: cooperate with CUA services, attend substance abuse treatment, obtain safe and stable housing, attend all of Children's medical appointments, and visit with Children.

Following a permanency review hearing on August 22, 2017, Father was referred for a drug screen at CEU the following month where he was to provide verification for substance abuse treatment. He did not show up to the appointment. On November 21, 2017, Father tested positive for using cocaine. On January 24, 2018, Father reported to CEU that he was attending substance abuse treatment at Girard Medical Center, but he failed to provide any verification upon request. Father was deemed non-compliant with his permanency review plan at two subsequent review hearings held on January 29, 2018 and May 21, 2018. On October 1, 2018, Father was found to be minimally compliant with his plan and was referred to Behavior Health Services to obtain mental health treatment. On November 26, 2018, DHS filed a petition for involuntary termination of Father's parental rights to Children pursuant to 23 Pa.C.S. §§ 2511(a)(2), (5), (8), and (b).

The court held a permanency review hearing, following several continuances, on August 5, 2019. There, CUA did not provide any updates on Father's progress or compliance with his plan. At the start of the hearing, however, the Honorable Deborah Canty spoke with Children privately in chambers, stating afterwards on the record that:

They are very articulate at 10 and 14[,] very articulate. And they made it very clear they do not want to return to their Father. They love him. But, they are tired of the cycle of [Father] using [drugs], getting them back, going back to using, and being concerned as to whether [] the food that they're getting when he comes home is from a trashcan or from some place that he's purchased. And they've indicated they've actually seen [Father] under the influence. . . . [T]hey are together in a general foster home that they like very much.

N.T. Permanency Hearing, 8/5/19, at 25-26.[3]  That same day, the trial court ordered that Father not initiate contact with Children or their foster parents due to Children's concern that Father would continue harassing those foster parents and cost Children their foster home, as he had done with a previous foster family. *Id.*  Children were permitted to contact Father at their discretion. *Id.*  On September 26, 2019, the court issued a second order prohibiting Father from having any contact whatsoever with Children or their foster family, including visitation, absent a request from Children. Order, 9/26/19.  Following a status review hearing on October 21, 2019, at which

---

[3] Children spoke with Judge Canty extensively in chambers about witnessing Father's substance abuse firsthand; his expressed disinterest in looking for employment and housing; his stated plans to make their foster parents' lives "a living hell;" his refusal "to buy [Children] a full meal," including his sale of food stamps for drug money; and at least one instance in which Father struck P.C., Jr., for trying to wake him up when he was "knocked out high sitting on the couch." N.T. Sealed Testimony of Children, 8/5/19, at 3-9. Children also expressed that they and their foster parents, with whom they have lived for years, "have grown to love [each other]," and that their foster parents provide Children with positivity and stability. *See id.* at 7-9.

Father was present, the court ordered a goal change/termination hearing be held on November 20, 2019.

On November 20, 2019, the court held a termination hearing[4] at which a CUA case manager and former CUA case manager supervisor[5] testified; the court also incorporated Children's testimony from the August 5, 2019 permanency review hearing and admitted into evidence a letter from Children to Judge Canty stating that they hope she will terminate Father's parental rights. N.T. Termination Hearing, 11/20/19, at 11; DHS Exhibit 9. Father did not attend the termination hearing. Following the hearing, the court entered decrees terminating Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5) and (b) of the Adoption Act.[6]

---

[4] Lee Kuhlmann, Esquire, represented Children at the termination hearing. At the hearing, the trial judge recalled that she had determined she did not need to appoint separate counsel to represent Children's legal interests. *See* N.T. Termination Hearing, 11/20/19, at 3-4. *See* 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and *In re K.R.*, 200 A.3d 969 (Pa. Super. 2018) (en banc), *but see In Re: T.S., E.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian ad litem representing the child's best interests can also represent the child's legal interests.").

[5] Victoria Koroma worked as the case manager supervisor for Children's case from March 2019 to August 2019. N.T. Termination Hearing, 11/20/19, at 29. She continued to be involved in Children's lives, having visited them in September of 2019. *Id.* at 29-32.

[6] 23 Pa.C.S.A. §§ 2101-2938.

Father filed a timely notice of appeal[7] and a contemporaneous Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[8]  On March 5, 2020, counsel filed a petition for leave to withdraw as counsel pursuant to **Anders** and **V.E.**  In **V.E.**, our Court stated:

> Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition this court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal.  Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, the court holds that appointed counsel seeking to withdraw representation must submit an **Anders** brief.

**In re Adoption of V.E.**, 611 A.2d at 1275.  Moreover, we held that "any motion to withdraw representation, submitted by appointed counsel, must be accompanied by an advocate's brief, and not the *amicus curiae* brief delineated in [**Commonwealth v.**] **McClendon**, [434 A.2d 1185 (Pa. 1981)].  **See also In re Adoption of R.I.**, 312 A.3d 601, 602 (Pa. 1973) ("the logic behind . . . an individual in a criminal case being entitled to representation by counsel at any proceeding that may lead to 'the deprivation of substantial

---

[7] On December 24, 2019, our Court *sua sponte* consolidated the four appeals.  Order, 12/24/19.  **See** Pa.R.A.P. 513 (consolidation of multiple appeals).

[8] **See** Pa.R.A.P. 1925(a)(2) (in children's fast track cases, concise statement shall be filed and served with notice of appeal).

rights' . . . is equally applicable to a case involving an indigent parent faced with the loss of her child.").

In his **Anders** brief,[9] counsel raises the following issues for our consideration:

1. Whether there is anything in the record that might arguably support the appeal that obviates a conclusion that the appeal is frivolous?

2. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.[] §[] 2511(a)(2)?

3. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.[] §[] 2511(a)(5)?

4. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.[]. §[] 2511(a)(8)?

5. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.[] §[] 2511(b)?

**Anders** Brief, at 5 (unnecessary capitalization omitted).

Before reaching the merits of Father's appeal, we must first address counsel's petition to withdraw. To withdraw under **Anders**, counsel must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [**Anders**] brief to the [appellant]; and (3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.[10]

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super.

_____

[9] DHS and counsel for Children have chosen not to file briefs on appeal.

[10] Father has not raised any additional arguments on appeal.

- 8 -

2009)).  With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

**Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

> An **Anders** brief must also comply with the following requirements:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).  Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel."

**Commonwealth v. Flowers**, 1133 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Instantly, Father's counsel filed a petition to withdraw, certifying that he reviewed the record and determined that Father's appeal is frivolous.  Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Father, and counsel's assessment of why those issues are wholly frivolous, with citations to relevant

legal authority. Counsel has also provided Father with a copy of the brief and a letter advising him of his right to retain new counsel or raise additional issues *pro se*. Accordingly, we find that counsel has substantially complied with the requirements of **Anders** and **Santiago**, and, thus, may review the issues raised by counsel and also conduct our independent review of the record.

Our standard of review in termination of parental rights cases is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

At the termination hearing, CUA Case Manager Hamar Jalov testified that Father has consistently failed to complete even a single plan objective, whether it be drug and alcohol treatment, mental health therapy, or educational programs regarding parenting, housing, finances, or employment. N.T. Termination Hearing, 11/20/19, at 14-16. Furthermore, Father has been unable to keep Children in stable housing or provide for their basic needs; in Father's care, Children regularly move from one homeless shelter to another

and do not receive any treatment for their medical issues, including P.C., Jr.'s visual impairment and S.C.'s congenital hormone imbalance. *See id.* at 13, 31.

Children have lived with foster parents who are an adoptive resource for approximately two and one-half years at the time of the termination hearing. Children are thriving in foster care and have developed strong attachments to their foster parents. *T.S.M.*, 71 A.3d at 268 ("[C]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents.") (citation omitted). Both Mr. Jalov and Ms. Koroma, Father's former CUA case manager supervisor, testified that Children are in a stable environment with foster parents who treat them as their own, provide for their basic and medical needs, and Children feel loved and cared for. *See* N.T. Termination Hearing, 11/20/19, at 23-26, 31-35. In addition, both CUA workers testified that terminating Father's parental rights would be in Children's best interests and that doing so would not cause them any irreparable harm. *Id.* at 23-25, 35; *see* 23 Pa.C.S. § 2511(b) ("in terminating the rights of a parent [court] shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.").

After careful review of the record, we find there is ample, competent evidence to support the trial court's factual findings. *T.S.M.*, *supra*. Moreover, the court's conclusions are not a result of an error of law or an abuse of discretion. *Id.* Children were initially removed from Father's care

- 11 -

due to Father's drug abuse, lack of housing, and inability to meet Children's basic needs, including their medical needs. Since Children were adjudicated dependent, Father has not demonstrated any progress on his ability to stop using drugs, keep suitable housing or employment, or provide for Children's basic needs.[11] Accordingly, we find that the record supports the trial court's finding that termination was proper pursuant to section 2511(a)(2) where Father demonstrated "continued incapacity, abuse, [and] neglect . . . causing [Children] to be without essential parental care, control or subsistence necessary for [their] physical or mental well-being[.]" 23 Pa.C.S. § 2511(a)(2).[12]

With regard to termination under section 2511(b), both caseworkers testified that terminating Father's rights is in Children's best interests and that there would be no detrimental effects if Father's rights were terminated. N.T.

_____

[11] Ms. Koroma testified that S.C. reported feeling uncomfortable around Father who, during a visit in September 2019, shamed her for receiving medical treatment for a congenital hormonal imbalance. N.T. Termination Hearing, 11/20/19, at 30-31.

[12] Additionally, the record amply supports the trial court's findings that termination was proper under sections 2511(a)(5) and (a)(8). In addition to the fact that Father continues to use drugs and cannot find suitable housing or employment, Children have been removed from Father's care since May of 2017—approximately three years to date. Two CUA personnel who worked on Children's case testified that terminating Father's rights would serve Children's best interests. Children have also repeatedly articulated that they have had enough of watching their Father abuse drugs, drag them from shelter to shelter, and manipulate people into believing he can or will provide for their basic needs. *See* N.T. Sealed Testimony of Children, 8/5/19; DHS Exhibit 9; *see also* 23 Pa.C.S. §§ 2511(a)(5), (a)(8) (grounds for involuntary termination of parental rights).

Termination Hearing, 11/20/19, at 23-25, 35. Children have developed strong attachments to their foster parents, who are an adoptive resource, and are thriving in their care. Caseworkers Jalov and Koroma testified that P.C., Jr., and S.C. are receiving medical treatment for the health issues Father neglected to attend to. *Id.* at 26, 31. The trial court also expressly based terminating Father's parental rights, in part, on Children's prior testimony,

> where both [P.C., Jr.,] and [S.C.] testified and indicated in no uncertain terms that they wanted [Father]'s rights to be terminated. . . . They are more than prepared, and were quite disappointed that I had been out sick and unable to actually hear this case sooner, and terminate [Father's] parental rights.

*Id.* at 38-39. Accordingly, we find that the court properly found clear and convincing evidence for termination under section 2511(b). *See In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.").

Finally, our independent examination of the record indicates that there are no other non-frivolous claims that can be raised. *V.E.*, *supra*. Accordingly, we conclude Father's appeal is frivolous and grant counsel's motion to withdraw.

Orders affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/09/2020